# Exhibit A

**State of Alabama**
**Unified Judicial System**

Form ARCiv-93    Rev.6/99

# COVER SHEET
## CIRCUIT COURT – CIVIL CASE
(Not For Domestic Relations Cases)

Case Number
`C` `V` ☐ ☐ ☐ ☐ ☐ ☐ ☐ - ☐

Date of Filing: ☐ ☐ ☐ ☐ ☐ ☐    Judge Code: ☐ ☐ ☐ ☐ ☐ ☐
Month   Day   Year

---

IN THE CIRCUIT COURT OF ___RUSSELL COUNTY___ , **ALABAMA**
(Name of County)

___ANITA KONIECZKA HECK___ v. ___BAC HOME LOANS SERVICING, LP___
Plaintiff                                First Defendant                ___SIROTE & PERMUTT, PC___

**First Plaintiff** ☐ Business ☑ Individual    **First Defendant** ☑ Business ☐ Individual
☐ Government ☐ Other                              ☐ Government ☐ Other

---

**NATURE OF SUIT:** Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
☐ WDEA - Wrongful Death
☐ TONG - Negligence: General
☐ TOMV - Negligence: Motor Vehicle
☐ TOWA - Wantonness
☐ TOPL - Product Liability/AEMLD
☐ TOMM - Malpractice-Medical
☐ TOLM - Malpractice-Legal
☐ TOOM - Malpractice-Other
☐ TBFM - Fraud/Bad Faith/Misrepresentation
☐ TOXX - Other: _____

**TORTS: PERSONAL INJURY**
☐ TOPE - Personal Property
☐ TORE - Real Property

**OTHER CIVIL FILINGS**
☐ ABAN - Abandoned Automobile
☐ ACCT - Account & Nonmortgage
☐ APAA - Administrative Agency Appeal
☐ ADPA - Administrative Procedure Act
☐ ANPS - Adults In Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/
Enforcement of Agency Subpoena/Petition to Preserve
☐ CVRT - Civil Rights
☐ COND - Condemnation/Eminent Domain/Right-of-Way
☐ CTMP - Contempt of Court
☐ CONT - Contract/Ejectment/Writ of Seizure
☐ TOCN - Conversion
☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction
Election Contest/Quiet Title/Sale For Division
☐ CVUD - Eviction Appeal/Unlawful Detainer
☐ FORJ - Foreign Judgment
☐ FORF - Fruits of Crime Forfeiture
☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
☐ PFAB - Protection From Abuse
☐ FELA - Railroad/Seaman (FELA)
☑ RPRO - Real Property   FORECLOSURE SALE   COMPLAINT &
☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship   SALE   TRO
☐ COMP - Workers' Compensation   FRI, JAN. 13TH
☐ CVXX - Miscellaneous Circuit Civil Case

---

**ORIGIN** (check one): F ☐ INITIAL FILING    A ☐ APPEAL FROM    O ☐ OTHER: _____
DISTRICT COURT

R ☐ REMANDED    T ☐ TRANSFERRED FROM
OTHER CIRCUIT COURT

---

**HAS JURY TRIAL BEEN DEMANDED?** ☑ YES ☐ NO    Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

---

**RELIEF REQUESTED:** TRO ☑ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

---

**ATTORNEY CODE:**
☐ ☐ ☐ ☐ ☐    ___1-12-2012___    _[signature]_ Anita K Heck
Date    Signature of Attorney/Party filing this form

---

**MEDIATION REQUESTED:** ☐ YES ☐ NO ☐ UNDECIDED

2012 JAN 12 PM 2:59 FILED IN OFFICE

## IN THE CIRCUIT COURT OF RUSSELL COUNTY, ALABAMA

**ANITA KONIECZKA HECK,**

               **PLAINTIFF,**

**VS.**

**BAC HOME LOANS SERVICING,
L.P. f/k/a COUNTRYWIDE HOME
LOANS SERVICING, L.P.** , A DIVISION OF
**BANK OF AMERICA, N.A.;
SIROTE & PERMUTT PC; and
DEFENDANTS A, B, and C,
intended to represent those parties
that plaintiff may have certain claims
against as a result of the actions
described in plaintiff's complaint,
Plaintiff avers that the identities of
the fictitious party defendants are
otherwise unknown to plaintiff at this
time, or if their names are known to
plaintiff at this time, their identities
as proper party defendant are not
known to plaintiff at this time, but
their true names will be substituted
by amendment when ascertained.**

             **DEFENDANTS.**

**CASE NUMBER:**

CU-12-1008

```
THIS DOCUMENT
PREPARED BY
PLAINTIFF OR
PLAINTIFF'S ATTORNEY
```

**Jury Trial Demanded**

## COMPLAINT

## STATEMENT OF THE PARTIES

    1.    The Plaintiff, Anita Konieczka Heck, (hereinafter referred to as "Heck"), is appearing pro se and is an adult resident citizen of Russell County, Alabama over the age of nineteen years.

    2.    The Defendant, BAC Home Loans Servicing, L.P., f/k/a Countrywide Home Loans Servicing, L.P. (hereinafter referred to as BAC) is a limited partnership. BAC has only two partners: BANA LP, LLC and BAC GP, LLC. Both partners are wholly owned by Bank of America, N.A, which is a banking association that has its main office located in North Carolina and is a citizen of North Carolina. Therefore, Defendant BAC is a citizen of North Carolina, and may be served with process by serving its registered agent, CT Corporation System at 2 North Jackson Street, Suite 605, Montgomery, Alabama 36109.

    3.    The Defendant, Sirote & Permutt PC (hereinafter referred to as Sirote), is a law firm conducting foreclosures for BAC and is a domestic

corporation of and registered in the State of Alabama and may be served with
process by serving its registered agent, John Cooper, 2311 Highland Avenue South,
Birmingham, AL 35205.

<div align="center">**JURISDICTION**</div>

      4.     Jurisdiction is proper in the Circuit Court of Russell County. The underlying
action is based upon a contract executed in Russell County, Alabama. The action is
brought to enjoin an illegal foreclosure sale scheduled in Russell County, Alabama on Friday,
January 13, 2012. The action is brought to enforce the contractual obligations of Defendants
as outlined in the mortgage contract, including, but not limited to those obligations specified in
the Uniform Covenants, Page 3, Item 2 (Applications of Payments or Proceeds) and in Non-
Uniform Covenants, Section 22, Page 10, Paragraph 2 (Publication of Foreclosure Sale) of the
mortgage document (Exhibit A). Defendants refuse to correct an incorrect payoff balance to
reflect the true and accurate balance due on the mortgage. This action seeks damages in
contract and tort for the actions of the Defendants with respect to their servicing and
foreclosure on the loan in question.

<div align="center">**VENUE**</div>

      5.     Venue is proper in this Court as the plaintiff is a citizen of Russell County
and all of or substantially all of the wrongs complained of occurred in this County.

<div align="center">**BACKGROUND**</div>

      6.     Defendant BAC is a wholly owned subsidiary of the well-known banking
institution Bank of America. Defendant BAC performs "servicing" of home loans for
various parties that own the right to receive payments on the loan (holders). These holders
are often investors, securitized trusts, or banking institutions that do not have the
infrastructure to collect payments from borrowers or, in their business judgment, have found
it preferable to use a "servicer," such as Defendant BAC. The exact type of "servicing" that a
"servicer" performs is often controlled by private contract or government regulation,
depending on the type of loan. However, servicing generally includes such functions as
collecting payments, communicating with borrowers on the holder's behalf, and in some
cases, administering a foreclosure.

      7.     Plaintiff alleges, upon information and belief, that Defendant BAC, in its
capacity as loan servicer for Fannie Mae, breached its obligations under the mortgage contract

wherein Defendant failed to advertise notice of the scheduled foreclosure sale of Plaintiff's primary residence for three (3) consecutive weeks.

8.      Plaintiff alleges, upon information and belief, that Defendant BAC violated the Fair Debt Collection Practices Act (FDCPA) as a result of its failure to properly credit mortgage payments; its failure to validate a disputed debt; its failure to respond to inquiries; and its failure to suspend foreclosure proceedings. Defendant BAC is defined as a "debt collector" and is subject to the FDCPA with respect to Plaintiff's account because that account was in default at the time Defendant BAC obtained it.

9.      Plaintiff submitted two Qualified Written Requests (Exhibits B & C), in part, to force BAC to correct its records wherein it failed to credit several loan mortgage payments against the mortgage principal and interest and instead credited the loan mortgage payments as Miscellaneous Payments as shown on BAC Loan History (Exhibit D).

10.     Plaintiff alleges, upon information and belief, that Defendants engaged in and have engaged in a pattern and practice of falsifying loan transactions and in particular assignments of mortgages for the purpose of enabling its joint venturers to foreclose on property of unsuspecting or unknowing consumers illegally and without legal standing to foreclose.

MERS specifically states in their **Rule 3 – Obligations of MERS, Section 3(a):**

*Section 3.* (a) Upon request from the Member, Mortgage Electronic Registration Systems, Inc. shall promptly furnish to the Member, in accordance with the Procedures, a corporate resolution designating **one or more officers of such Member**, selected by such Member, as "certifying officers" of Mortgage Electronic Registration Systems, Inc. to permit such Member (i) to release the lien of any mortgage loan registered on the MERS® System to such Member, (ii) assign the lien of any mortgage naming MERS as the mortgagee when the Member is also the current promissory note-holder, or if the mortgage is registered on the MERS® System, is shown to be registered to the Member, (iii) to foreclose upon the property securing any mortgage loan registered on the MERS® System to such Member, (iv) to take any and all actions necessary to protect the interest of the Member or the beneficial owner of a mortgage loan in any bankruptcy (Exhibit E – obtained from MERS website)

Plaintiff alleges, upon information and belief, that Defendants knowingly and willingly recorded an illegal Assignment of Mortgage (Exhibit F) in the Russell County records executed by Ginny C. Rutledge as Assistant Secretary and Vice President of Mortgage Electronic Registration Systems, Inc., but who is in truth and in fact, an employee and **not** an officer of Defendant Sirote as required by MERS aforementioned Rule 3 to act as its agent in assignments and foreclosures. Secretary of State screens indicate the officers of Defendant

Sirote for the years 2009, 2010, and 2011 did not include Ginny C. Rutledge (Exhibit G).

11.     The plaintiff alleges that the defendant failed to comply with applicable mortgage servicing regulations, guidelines and agreements and as such a condition precedent to acceleration and foreclosure has been violated requiring the cancellation of the scheduled foreclosure sale.

12.     The plaintiff alleges that Defendents do not have the authority to proceed with the foreclosure sale as it has public notice has not been published in accordance with the mortgage contract and Code of Alabama and the alleged Assignment of Mortgage is void, voidable, illegal, without legal effect and is otherwise invalid and unenforceable in that Ginny C. Rutledge does not and did not in 2009 have the legal authority to execute the aforementioned Assignment of Mortgage in accordance with MERS prescribed rules for its members. Sirote is a member of MERS. The Plaintiff is willing to provide at an evidentiary hearing, proof of said lack of legal authority to foreclose.

13.     The defendants owed a fiduciary duty to the plaintiff to properly collect payments, distribute payments, debit the plaintiff's account and credit the plaintiff's account. Defendants also owed to the plaintiff a duty not to assess illegal, unauthorized or improper charges and to service the mortgage of the plaintiff in a commercially reasonable manner so as to not create a false default or a default not based in fact.

14.     The defendants breached its duty to the plaintiff by not properly crediting the plaintiff's account or distributing the plaintiff's payments appropriately and by applying to the plaintiff's account charges which are illegal, unauthorized or improper and servicing the plaintiff's loan in a manner that is commercially unreasonable and by creating a false default or exacerbating a default for the purposes of unjustly enriching the defendants.

15.     The defendants' breach proximately caused injury and damage to the plaintiff, including emotional and financial injuries.

16.     The defendants engaged in wanton conduct in that the defendants consciously misapplied payments made on the account and added false and bogus charges to the plaintiff's account which falsely increased Plaintiffs delinquency so that the defendants could wrongfully declare the loan to be in default. The actions of the defendants were taken with reckless indifference to the consequences to the plaintiff, knowing full well that the defendant's actions would produce injury and harm to the plaintiff.

17. The defendants knew that these actions were likely to result in injury to the plaintiff including financial and emotional injuries and mental anguish.

18. As a proximate result of the defendants' wantonness the plaintiff was injured and harmed and suffered financial injury and emotional damages.

19. The actions of the defendants in applying charges to the mortgage account of the plaintiff which was either illegal, wrong in character, wrong in amount, unauthorized, or otherwise improper resulted in the defendant being unjustly enriched.

20. As a result of the defendants' unjust enrichment, the plaintiff has been injured and damaged in that the plaintiff has been forced to pay charges that were illegal, wrong in character, wrong in amount, unauthorized, or otherwise improper under threat of foreclosure by the defendants.

21. The plaintiff claims all damages allowable under law as a result of the defendants'

wrongful conduct and unjust enrichment.

22. The defendants have initiated a foreclosure proceeding against the plaintiff in violation of law.

23. The initiation of the foreclosure proceeding by the defendants was either negligent, wanton or intentional, depending on proof adduced at trial.

24. As a result thereof, the defendants are liable for all natural, proximate and consequential damages due to their actions including an award of punitive damages upon a proper evidentiary showing.

### PETITION FOR AN EX PARTE TEMPORARY RESTRAINING ORDER

25. The plaintiff adopts and realleges all prior paragraphs of this pleading as if set out here in full.

26. A Temporary Restraining Order is an equitable remedy that the Circuit Court has the power and authority to grant.

27. The purpose of a Temporary Restraining Order (hereinafter TRO) is to preserve the status quo ante until a final determination has been made on the merits.

28. A TRO may be granted without notice if it clearly appears from specific facts shown by a verified pleading or affidavit that immediate and irreparable harm will result before the adverse party or his attorney can be heard in opposition is notified.

29.     In the present case, the defendants are proceeding with an illegal foreclosure sale to occur on Friday, January 14, 2012.

30.     Unless a TRO is entered in the present case, the plaintiff will be deprived of her property without the Circuit Court having an opportunity to review or rule upon the substantive allegations of the complaint.

31.     The Petitioner alleges that immediate and irreparable harm will result if the defendants are allowed to complete the foreclosure.

32.     The Petitioner avers that the legal remedy available is inadequate to prevent the foreclosure without the intervention of the Court.

33.     The Petitioner avers that a property right exists in her home.

34.     The Petitioner avers that the delinquency amount cited by Defendents is a false or bogus amount created by the defendants.

35.     The Petitioner avers that the foreclosing entity lacks legal authority to proceed with the aforementioned foreclosure sale in the present case and to allow it to foreclose could cause the petitioner to lose her home without being relieved of her contractual obligation on the debt.

36.     The Petitioner shows unto the Court that enforcement is feasible as the Court has jurisdiction of this matter and has in personam jurisdiction over the parties.

37.     The Petitioner further alleges that the hardships are balanced in this matter and that the Defendants have no legal authority to sell Petitioner's home to the best of the Petitioners' knowledge and belief.  Further, the defendant is protected equitably in that the home in question is occupied and the home is maintained and not suffering waste or neglect.

53.     The Petitioner prays that this Court will issue an ex parte TRO until such time as this Court may take up this matter.  The Petitioner further prays that this Court would grant the relief requested and issue a Temporary Restraining Order enjoining the foreclosure sale from being conducted on Friday, January 13, 2012, until such time as the bona fides of the plaintiff's complaint can be heard before the Court after the taking of evidence.

**WHEREFORE,** the Plaintiff having set forth her claims for relief against the Defendants respectfully prays of the Court as follows:

A. That the Plaintiff have and recover against the Defendants a sum to be determined by a jury of her peers in the form of actual damages;

B. That the Plaintiff have and recover against the Defendants a sum to be determined by a jury of her peers in the form of punitive damages;

C. That the Defendants be enjoined from continuing with its foreclosure sale until such time as the material averments of the Plaintiff's complaint have been heard.

D. That the Plaintiff have such other and further relief as the Court may deem just and proper, NOT TO EXCEED $50,000.

Anita Konieczka Heck
PETITIONER, appearing Pro Se
286 Brown Road
Phenix City, AL 36869

2012 JAN 12 PM 2:53

## CERTIFICATION

I, Anita Konieczka Heck, do hereby certify that I contacted the foreclosure attorney by letter and asked that he voluntarily postpone the foreclosure sale but that he refused. Because refuses a voluntary continuance of the foreclosure sale I believe that a TEMPORARY RESTRAINING ORDER is the only way to prevent or postpone the scheduled sale. Because the defendants refuse to voluntarily postpone the foreclosure sale pending the outcome of the litigation it is my judgment that notice should not be required because the Defendants will not consent to less restrictive means to prevent the foreclosure sale.

I have faxed a copy of these proceedings to the Defendants this 12th day of January, 2012.

Anita Konieczka Heck
286 Brown Road
Phenix City, AL 36869
Tel. 334-297-9412

# EXHIBIT A

A

Sep 07 11 06:18p     Anita K. Heck, Ph.D.                 985-876-7289       p.14

MTG 01408 PAGE 0332

After Recording Return To: Phase 3 L..
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O. Box 10423
Van Nuys, CA 91410-0423

Prepared By:
Heritage Title Insurance LLC
23272 Hwy. 49 Frontage Rd. Ste C
Saucier MS 39574
225-539-5536

STATE OF ALA.
RUSSELL, CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON
MTG 01408 PG 0332-0343 2007 Sep 17
03:30PM

Alford M. Harden Jr.
JUDGE OF PROBATE

| INDEX | $6.00 |
| REC FEE | $30.00 |
| MORTGAGE TAX | $299.70 |
| CHECK TOTAL | $340.70 |
| 12114 | Clerk: JANITA 03:30PM |

---[Space Above This Line For Recording Data]---

178965325
(Escrow/Closing #)

00017895325508007
(Doc ID #)

# MORTGAGE

MIN 1001337-0002428618-2

616  178965325  D2  001  001

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated **AUGUST 23, 2007** , together with all Riders to this document.
(B) "Borrower" is
**ANITA K HECK, AN UNMARRIED WOMAN**

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(D) "Lender" is
Countrywide Bank, FSB.
Lender is a FED SVGS BANK
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
(E) "Note" means the promissory note signed by Borrower and dated **AUGUST 23, 2007** . The Note states that Borrower owes Lender
**ONE HUNDRED NINETY NINE THOUSAND EIGHT HUNDRED** and 00/100

Dollars (U.S. $ 199,800.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **SEPTEMBER 01, 2037** .
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

ALABAMA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 11

-6A(AL) (0009).01   CHL (08/05)(d)   VMP Mortgage Solutions, Inc. (800)521-7291
CONVVA

Form 3001 1/01





Sep 07 11 06:19p

Anita K. Hook, Ph.D.

985-876-7289

p.16

DOC ID #: 00017896833508007

MTG 01608 PAGE 0333

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower (check box as applicable):

☐ Adjustable Rate Rider  ☐ Condominium Rider  ☐ Second Home Rider
☐ Balloon Rider  ☐ Planned Unit Development Rider  ☐ 1-4 Family Rider
☐ VA Rider  ☐ Biweekly Payment Rider  ☐ Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably mortgages, grants and conveys to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the [County]

[Type of Recording Jurisdiction]  of  [Name of Recording Jurisdiction]:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:   which currently has the address of

Alabama   36869  ("Property Address");
          [Zip Code]

3

Form 3001  1/01

266 BROWN ROAD, PHENIX CITY

CH: (page)   Page of 21

DOC ID #: 00017895553500807

MIN: 01608 PAGE 0334

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for any

ALABAMA - Single Family

MTG 01608 PAGE 0395

Sep 07 11 08:21p     Anita K. Heck, Ph.D.     985-876-7289     p.18

MTG3 01602 PAGE 0335

DOC ID #: 000178963330007

Sep 07 11 06:22p        Anita K. Heck, Ph.D.        985-376-7289        p.19

MTG 01608 PAGE 0337

DOC ID #: 0001788653809007

Sep 07 11 06:23p     Anita K. Heck, Ph.D.     985-876-7289     p.20

DOC ID #: 00017894533508007

MTG 01608 PAGE 0338

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

Form 3001 1/01

Page 9 of 11

Anita K. Heck, Ph.D.

985-876-7289

p.1

DOC ID # 001799883350807

MTG 01602 PAGE 0359

(a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

MTG 01608 PAGE 0341

DOC ID #: 000179956323590007

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice to Borrower in the manner provided in Section 15. Lender shall publish the notice of sale once a week for three consecutive weeks in a newspaper published in _____ County, _____, and thereupon shall sell the Property to the highest bidder at public auction at the front door of the County Courthouse of this County. Lender shall deliver to the purchaser Lender's deed conveying the Property. Lender or its designee may purchase the Property at any sale. Borrower covenants and agrees that the proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

23. Waivers. Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
ANITA K. HECK                    -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

Form 3001 1/01          Page 10 of 11          CHL (08/05)(d)

MTG 01608 PAGE 0342

DOC ID #: 00017896832508007

STATE OF ALABAMA, Russell County ss:

On this 23rd day of August, I, Amanda Vengas, a Notary Public in and for said county and in said state, hereby certify that Anita K Heck

_______________, whose name(s) is/are signed to the foregoing conveyance, and who is/are known to me, acknowledged before me that, being informed of the contents of the conveyance, he/she/they executed the same voluntarily and as his/her/their act on the day the same bears date.

Given under my hand and seal of office this 23rd day of August, 2007.

My Commission Expires: Nov. 4, 2009

Amanda Vengas
Notary Public

Prepared By:
MELODY HAYNES
Countrywide Home Loans, Inc. dba America's Wholesale Lender
100 CONCOURSE PKWY SUITE 100, BIRMINGHAM, AL 35244

MTG 01608 PAGE 0343

EXHIBIT "A"

*A tract of land located in part of the SE ¼ of Section 34, Township 17 North, Range 28 East, Russell County, Alabama, described as follows: COMMENCE at the Northeast corner of the SE ¼ of said Section 34 and run thence North 87 degrees 40 minutes West 305 feet to an iron pin located on the Northwestern ROW of Brown Road (60 foot ROW); thence North 88 degrees 38 minutes West 739.11 feet to an iron pin; thence South 00 degrees 58 minutes East 300 feet to an iron pin; thence South 74 degrees 00 minutes East 410.2 feet to an iron pin located on the Northwestern ROW 108.9 feet to an iron pin; thence South 50 degrees 14 minutes East along said ROW 20 feet to an iron pin; thence North 39 degrees 46 minutes East along said ROW 40.6 feet to an iron pin; thence North 38 degrees 02 minutes East along said ROW 199.8 feet to an iron pin; thence North 37 degrees 51 minutes East along said ROW 171.13 feet to an iron pin at the Point of Beginning.*

# EXHIBIT B

*B*

# *QUALIFIED WRITTEN REQUEST dated June 14, 2011*

**QWR-BAC Home Loan Servicing, LP**
**Borrower:  Anita Konieczka Heck**
**Loan Acct. No. 178968325**

### *Anita Konieczka Heck*
**Property Address**:  286 Brown Road
Phenix City, AL  36869
**Mailing Address**: 313 Southdown West Blvd.
Houma, LA  70360
Tel. 985-791-5387
Email  akheck@bellsouth.net

**Via Fax 866-270-0620, 800-293-8158, 800-658-0395, 805-520-5019 AND**
**CERTIFIED MAIL No. 7008 1300 0001 2889 3404**
**RETURN RECEIPT REQUESTED**

June 14, 2011

Bank of America Home Loans
BAC Home Loan Servicing, LP
Mail Stop:  TX2-979-01-15
4500 Amon Carter Blvd.
Fort Worth, TX  75155

| | |
|---|---|
| Borrower: | Anita Konieczka Heck |
| Countrywide Loan No. | 178968325 |
| Fannie Mae Loan No. | 1704662 |
| Property Address: | 286 Brown Road |
| | Phenix City, AL  36869 |

### QUALIFIED WRITTEN REQUEST - VALIDATION OF DEBT LETTER - DISPUTE OF DEBT NOTICE, AND TILA REQUESTS

   I understand that under **Section 6 of RESPA** you are required to acknowledge my request within 20 business days and must try to resolve the issue within 60 business days.  Please treat this letter as a "qualified written request" in compliance with and under the **Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e)**.

   **Countrywide Reference:**  Loan No. 178968325 aka Fannie Mae Loan No. 1704662 (hereinafter the subject loan and is the reference for all questions and requests described below).

   **NOTE:**  The subject loan was in default when BAC Mortgage Loan Servicing, LP acquired the account, therefore, for purposes of my loan, BAC Mortgage Loan Servicing, LP is legally defined as a debt collector and is subject to all government regulations pertaining to debt collectors (see attached letter from Federal Trade Commission).

Page 1 of 8

### *QUALIFIED WRITTEN REQUEST dated June 14, 2011*

**QWR-BAC Home Loan Servicing, LP**
**Borrower: Anita Koselczka Heck**
**Loan Acct. No. 178968325**

To Whom It May Concern:

    I spoke with BAC Home Loans Servicing, LP Home Retention Department last Friday, June 10, 2011, and again on Monday, June 13, 2011, concerning my account status and was told that my account was placed in default in February 2009, which by definition means the last payment you claim to have from me on the account was prior to February 2009. I paid several payments to Countrywide Funding in the latter part of 2009. Therefore, I am formally disputing the alleged balance due and the alleged date of default BAC Home Loans Servicing, LP is claiming, which I believe to be incorrect and overstated. Additionally, throughout my one and a half year HAMP experience with BAC, I was frequently given different and conflicting financial and loan status information relative to my loan and my HAMP application. BAC recently denied my application for loan modification and is promptly selling my home on the court house steps on Friday, June 17, 2011, while denying me the opportunity to apply for Alternatives to Foreclosure in accordance with Fannie Mae's guidelines. If the foreclosure sale of my home goes forward Friday, it will be a null and void sale according to the Code of Alabama Property Law. I notified BAC and its attorneys (Sirote & Permutte) that the sale was in violation of provisions in both my Mortgage Contract, as well as in violation of Alabama Property law, and I further demanded that they postpone the sale until they comply with the stated Mortgage Contract and Alabama Property Law, and allow me the opportunity to apply for Alternatives to Foreclosure (i.e., Short Sale, Deed in Lieu) in accordance with Fannie Mae's Guidelines. But BAC refused and is proceeding with the sale willingly and knowingly breaching our contract and breaking Alabama Property Law.

    In light of the above referenced issues, I am writing to you to obtain information about my mortgage loan account above, and am requesting that you adjust your records to reflect **ALL** the payments I made in 2009, and to recalculate the actual total debt I owe Countrywide, as well as a new default date, which should be the latter part of 2009 or early 2010, and NOT February 2009 as your records currently reflect.

    I respectfully request all sales, transfers, funding sources, legal and beneficial ownership, charges, credits, debits, transactions, reversals, actions, payments, analyses, and records related to the servicing and ownership of my account from its origination to the present date.

### UNTIL SATISFACTORY RESPONSE TO ALL QUESTIONS AND REQUESTS ARE FORTHCOMING, I WILL ASSUME THAT THIS DEBT IS NOT VALID, AND DO HEREBY DISPUTE IT IN ITS ENTIRETY UNTIL PROVEN VALID.

# QUALIFIED WRITTEN REQUEST dated June 14, 2011

**QWR-BAC Home Loan Servicing, LP**
**Borrower: Anita Konelczka Heck**
**Loan Acct. No. 178968325**

Needless to say, I am very concerned that I may be among the victims I have been reading about in the stories of predatory lending and fraudulent foreclosures. I am especially concerned that potential fraudulent and deceptive practices by unscrupulous mortgage brokers; sales and illegal, unrecorded transfers of mortgages, deceptive and fraudulent servicing practices to enhance balance sheets; deceptive, abusive and fraudulent accounting tricks and practices may have also negatively affected my credit rating, mortgage account and/or the debt or payments that I am currently, or may be legally obligated to.

I hereby demand absolute first hand evidence from you of the original uncertificated or certificated security regarding my account # 178968325. I also hereby demand that a chain of transfer from Countrywide, my loan originator, to wherever the security is now be promptly sent to me as well. Absent the actual evidence of the security I have no choice but to dispute the validity of any lawful ownership, funding, entitlement right, and the current debt you say I owe. By debt I am referring to the principal balance you claim I owe; the calculated monthly payment, calculated escrow payment, and any fees claimed to be owed you or any trust or entity for whom you may service or sub-service.

To independently validate this debt, I must necessarily conduct a complete exam, audit, review, and accounting of my mortgage account from its inception through the present date. I also request that you conduct your own investigation and audit of my account since its inception to validate the debt you currently claim I owe to determine that you are not also a victim of performing fraud. I would like you to validate the debt so that it reflects ALL payments I made in 2009 and I request that said validation by you is accurately and adequately performed and that the outcome is accurate to the penny!

Please do not rely on previous servicing companies or originators records, assurances, or indemnity agreements and therefore refuse to conduct a full audit and investigation of my account.

I understand that potential abuses by Countrywide and/or BAC could have deceptively, wrongfully, unlawfully, and/or illegally:

- Increased my principal loan balance reflected;
- Increased my escrow payments;
- Increased the amounts applied and attributed toward interest on my account; and
- Decreased the proper amounts applied and attributed toward the principal on my loan account; and/or
- Assessed, charges and/or collected fees, expenses and miscellaneous charges I am not legally obligated to pay under this mortgage, note and/or deed of trust;
- Illegally recorded, or lack recordation, of assignments;
- Used "Robo-signers" involving any documents involved with this alleged debt; and
- Other abuses of fraud.

Page 3 of 8

## *QUALIFIED WRITTEN REQUEST dated June 14, 2011*

**QWR-BAC Home Loan Servicing, LP**
**Borrower: Anita Koneizka Heck**
**Loan Acct. No. 178968325**

I request you ensure that I have not been the victim of such predatory servicing and lending practices.

Again, this is a Qualified Written Request (QWR) under the Real Estate Settlement Procedures Act, codified as Title 12 section 2605(e) of the United States Code as well as a request under the Truth In Lending Act 15 U.S.C. section 1601. RESPA provides substantial penalties and fines for non-compliance or failure to answer my questions provided in this letter within sixty (60) days of its receipt.

In order to conduct the examination and audit of this loan, I need to have full and immediate disclosure including certified copies of all pertinent information regarding this alleged loan. The documents requested and answers to my questions are needed by me and others to ensure that this loan:

1. Was originated in lawful compliance with all federal and state laws, regulations including, but not limited to Title 62 of the Revised Statutes, RESPA, TILA, Fair Debt Collection Practices Act, HOEPA and other laws;

2. That the origination and/or any sale or transfer of my account or monetary instrument, was conducted in accordance with proper recordation laws and was a lawful sale with complete disclosure to all parties with an interest;

3. That you disclose the claimed holder in due course of the monetary instrument/deed of trust/asset is holding such note in compliance with statutes, State and Federal laws and is entitled to the benefits of payments;

4. That all good faith and reasonable disclosures of transfers, sales, Power of Attorney, monetary instrument ownership, entitlements, full disclosure of actual funding source, terms, costs, commissions, rebates, kickbacks, fees etc. were and still are properly disclosed to me, including but not limited to the period commencing with the original alleged loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

5. That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in accordance with statute, laws and the terms of mortgage, monetary instrument/deed of trust, including but not limited to all accounting or bookkeeping entries commencing with the original alleged loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof;

6. That each servicers and/or sub-servicers of this mortgage has serviced this mortgage in compliance with local, state and federal statutes, laws and regulations commencing with the

# *QUALIFIED WRITTEN REQUEST dated June 14, 2011*

**QWR-BAC Home Loan Servicing, LP**
**Borrower: Anita Kosaicaka Heck**
**Loan Acct. No. 178968325**

original alleged loan solicitation through and including any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof, ;

7. That this mortgage account has been credited, debited, adjusted, amortized and charged correctly and disclosed fully commencing with the original alleged loan solicitation through and including

any parties, instruments, assignments, letters of transmittal, certificates of asset backed securities and any subsequent transfer thereof ;

8. *That interest and principal have been properly calculated and applied to this alleged loan;*

9. *That any principal balance has been properly calculated, amortized, and accounted for;*

10. That no charges, fees, or expenses, not obligated by me in any alleged agreement, have been charged, assessed or collected from my account or any other related account arising out of the subject alleged loan transaction.

So that I may properly validate my debt and audit my account, please provide certified copies of pertinent documents to me. Please certify in writing, your answers to the various servicing questions. For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program, or database used by you that contains any information on my account or my name.

As such, please send to me, at my address above, copies of the documents requested below as soon as possible. Please provide copies of:

1. All data, information, notations, text, figures and information contained in your mortgage servicing and accounting computer systems including, but not limited to Alltel or Fidelity CPI system, or any other similar mortgage servicing software used by you, any servicers, or sub-servicer of my mortgage account from the inception of my loan to the date written above.

2. All descriptions and legends of all Codes used in your mortgage servicing and accounting system so that the examiners, auditors, and experts retained to audit and review my mortgage account may properly conduct their work.

3. All assignments, transfers, allonges, or other document evidencing a transfer, sale or assignment of my mortgage, deed of trust, promissory note or other document that secures payment by me to my obligation in my account from the inception of my loan to the present date including any such assignments on MERS.

## *QUALIFIED WRITTEN REQUEST dated June 14, 2011*

**QWR-BAC Home Loan Servicing, LP**
**Borrower: Anita Koselczka Heck**
**Loan Acct. No. 178968325**

4.  All records, electronic or otherwise, of assignments of my mortgage, promissory note or servicing rights to my mortgage including any such assignments on MERS.

5.  All deeds in lieu, modifications to my mortgage, promissory note, or deed of trust from the inception of my loan to the present date.

6.  The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicer of my account for payment of any monthly payment, other payment, escrow charge, fee or expense on my account.

7.  All escrow analyses conducted on my account from the inception of my loan until the date of this letter.

8.  The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on my disclosure statement including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, credit life insurance premiums, hazard insurance premiums, commissions, attorney fees, points, etc.

9.  Front and back copies of all payment receipts, checks, money orders, drafts, automatic debits and written evidence of payments made by others or me on my account.

10. All letters, statements, and documents sent to me by your company.

11. All letters, statements, and documents sent to me by agents, attorneys, or representatives of your company.

12. All letters, statements, and documents sent to me by previous servicers, sub-servicers or others in your loan file or in your control or possession or in the control or possession of any affiliate, parent company, agent, sub-servicer, servicer, attorney, or other representative of your company.

13. All letters, statements, and documents contained in my loan file or imaged by you, any servicer or sub-servicers of my mortgage from the inception of my loan to present date.

14. All electronic transfers, assignments, sales of my note, mortgage, deed of trust, or other security instrument.

15. All copies of property inspection reports, appraisals, BPOs and reports done on my property.

16. All invoices for each charge such as inspection fees, BPOs, appraisal fees, attorney fees,

## *QUALIFIED WRITTEN REQUEST dated June 14, 2011*

**QWR-BAC Home Loan Servicing, LP**
**Borrower: Anita Konieczka Heck**
**Loan Acct. No. 178968325**

insurance, taxes, assessments or any expense, which has been charged to my mortgage account from the inception of my loan to the present date.

17. All checks used to pay invoices for each charged such as inspection fees, BPOs, appraisal fees, attorney fees, insurance, taxes, assessments or any expense which has been charged to my mortgage account from the inception of my loan to the present date.

18. All agreements, contracts, and understandings with vendors that have been paid for any charge on my account from the inception of my loan to the present date.

19. All loan servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, loan histories, accounting records, ledgers, and documents that relate to the accounting of my loan from the inception of my loan until present date.

20. All loan servicing transaction records, ledgers, registers and similar items detailing how my loan has been serviced from the from the inception of my loan until present date.

Please provide me, with the documents I have requested and a detailed answer to each of my questions within the required lawful time frame. Upon receipt of the documents and answers, an exam and audit will be conducted that may lead to a further document requests and answers to questions under an additional QWR letter.

Copies of this Qualified Written Request, Validation of Debt, TILA and request for accounting and legal records, Dispute of Debt letter will be sent to FTC, HUD, ALL RELEVANT STATE AND FEDERAL REGULATORS; CONSUMER ADVOCATES; AND MY CONGRESSMAN if any further evasive actions are detected or this matter is not settled.

It is my hope that you can answer my questions, document and validate my debt to the penny, and correct any abuses or schemes uncovered and documented. **I would also like to have written validation/verification that the foreclosure process has been put on hold or will be extended until all of my requests have been satisfied and any inaccuracies corrected.**

Sincerely,

Anita Konieczka Heck

Anita Konieczka Heck
Borrower/Homeowner

Page 7 of 8

## *QUALIFIED WRITTEN REQUEST dated June 14, 2011*

**QWR-BAC Home Loan Servicing, LP**
**Borrower:  Anita Kossicska Heck**
**Loan Acct. No. 178968325**

Enclosure:  Letter from FTC

cc:    **Fannie Mae**
       1000 Brickell Avenue, Suite 600
       Miami, FL  33131

       **Federal Trade Commission**
       600 Pennsylvania Avenue, NW
       Washington, DC 20580

       **Government & Industry Relations**
       401 9th Street, NW
       Suite 600 South
       Washington, DC  20004

       **Office of RESPA and Interstate Land Sales**
       Office of Housing, Room 9146
       US Dept. of Housing and Urban Development
       451 Seventh Street, SW
       Washington, DC  20410

       **Sirote & Permutt** via fax (205) 930-5101
       2311 Highland Avenue South
       P.O. Box 55727
       Birmingham, AL 35255-5727



# EXHIBIT C

**Anita  Konieczka Heck, Ph.D.**
**Mailing Address:** c/o Mildred A. Cleckler (Mother)
313 Southdown  West Blvd
Houma, LA  70360
Tel. 985-8767289 (Mother)

**Home Address:** 286 Brown Road
Phenix City, AL 36869
Tel. 334-297-9412 (Home)
Tel.  985-791-5387 (Cell)
Email:  akheck@bellsouth.net

**CERTIFIED MAIL No. 7008 1300 0001 2889 3398**
**RETURN RECEIPT REQUESTED**

June 28, 2011

Bank of America Home Loans
BAC Home Loan Servicing, LP
Mail Stop: TX2-979-01-15
4500 Amon Carter Blvd.
Fort Worth, TX  75155

| | |
|---|---|
| **Borrower:** | Anita Konieczka Heck |
| **Bank of America Loan No.** | 178968325 |
| **Fannie Mae Loan No.** | 1704662 |
| **Property & Home Address:** | 286 Brown Road |
| | Phenix City, AL  36869 |

## QUALIFIED WRITTEN REQUEST - VALIDATION OF LOAN HISTORY AND DEBT - DISPUTE OF REINSTATEMENT AND PAY-OFF AMOUNTS

I understand that under Section 6 of RESPA you are required to acknowledge my
request within 20 business days and must try to resolve the issue within 60 business
days.  Please treat this letter as a "qualified written request" in compliance with
and under the Real Estate Settlement Procedures Act, 12 U.S.C. Section 2605(e).

Bank of America/Countrywide Loan No. 178968325 aka Fannie Mae Loan No.
1704662 (hereinafter the subject loan and is the reference for all questions and
requests described below).

*QUALIFIED WRITTEN REQUEST dated June 28, 2011*

**QWR-BAC Home Loan Servicing, LP**
**Borrower: Anita Konieczka Heck**
**Loan Acct. No. 178968325**

To Whom It May Concern:

On June 16, 2011, I faxed the attached request for an itemized list of **Reinstatement Costs (see Exhibit A)** to the law offices of your foreclosure attorneys, Sirote & Permutt. In response I received the attached letter from Ms. Leanna Mathews, Foreclosure Specialist at Sirote & Permutt **(see Exhibit B)**. Additionally, on March 1, 2011, I called Bank of America and requested an itemized loan history for my account and received the attached **Loan History** via fax from Bank of America **(see Exhibit C)**.

The need for this **Qualified Written Request** arose from questions and concerns I have relative to the accuracy of the two above referenced documents (Exhibits B & C), which woefully lack the detail required to ascertain the accuracy of my loan history, loan balance, and reinstatement amount. For example, Exhibit B shows "Amount Due to Bank of America $45,409.33"; but I have no idea what comprises that number. How much of it is interest, principal, late fees, and/or other servicer fees?

I am attempting to obtain a loan for purposes of reinstatement or payoff and the accurate reinstatement and loan balance amounts are paramount to that process and to my peace of mind given all of the lawsuits and allegations of fraud, misrepresentation, taking kickbacks, etc. currently being levied against Bank of America fka Countrywide Home Loans. Further, I have reason to believe that all of my mortgage payments were not applied properly or maybe not applied at all. I also have serious concerns about improper fees and costs having been charged to my loan account.

For the stated reasons, I am submitting this **Qualified Written Request** to obtain additional information and documentation to aid in the validation of the above referenced figures, as well as other areas of concern. My specific requests pertaining to my **Bank of America Loan No. 178968325** in the name of Anita Konieczka Heck are outlined on the attached **Addendum 1**.

Please be advised that you must acknowledge receipt of this qualified written request within 20 business days to my above stated mailing address, pursuant to 12 U.S.C. Section 2605(e)(1)(A) and Reg. X Section 3500.21(e)(1). Thank you for your assistance in this matter.

Sincerely,

*Anita Konieczka Heck*

**Anita Konieczka Heck**
**Homeowner**

**Attachments: Addendum 1**
              **Exhibits A – C**

*QUALIFIED WRITTEN REQUEST dated June 28, 2011*

**QWR-BAC Home Loan Servicing, LP**
Borrower: Anita Koneiczka Heck
Loan Acct. No. 178968325

cc:     **Sirote & Permutt** via fax (205) 930-5101
        2311 Highland Avenue South
        P.O. Box 55727
        Birmingham, AL 35255-5727

        **Fannie Mae**
        1000 Brickell Avenue, Suite 600
        Miami, FL 33131

        **Federal Trade Commission**
        600 Pennsylvania Avenue, NW
        Washington, DC 20580

        **Government & Industry Relations**
        401 9th Street, NW
        Suite 600 South
        Washington, DC 20004

        **Office of RESPA and Interstate Land Sales**
        Office of Housing, Room 9146
        US Dept. of Housing and Urban Development
        451 Seventh Street, SW
        Washington, DC 20410

*QUALIFIED WRITTEN REQUEST dated June 28, 2011*

**QWR-BAC Home Loan Servicing, LP**
**Borrower:  Anita Konieczka Heck**
**Loan Acct. No. 178968325**

### Addendum 1

**Request for Additional Information and Documentation**
**Relative to Bank of America Loan No. 178968325**
**in the Name of Anita Konieczka Heck**

1.    The **current amount needed to pay-off the loan** in full through **July 30, 2011.**

2.    The **current amount needed to reinstate the loan** in full through **July 30, 2011.**

3.    A **complete and itemized statement of the loan history** from the date of origination to the date of this letter including, but not limited to, **all receipts** by way of payment or otherwise and **all charges** to the loan in whatever form.  This history should include **nature and purpose** of each such debit and credit, and the **name and address of the payee** of any type of disbursement related to this account.  In other words, a **complete loan history.**

4.    A complete and itemized statement of all **advances or charges** against this loan for any purpose that are **not** reflected on the loan history transaction statement provided in answer to question #1.

5.    A complete and itemized statement of the **escrow account** of the loan, if any, from the date of the loan to the date of this letter, including, but not limited to, any receipts or disbursements with respect to real estate property taxes, fire or hazard insurance, flood insurance, mortgage insurance, credit insurance, or any other insurance product.

6.    A copy of the HUD-1 or HUD-1A, Truth In Lending (TILA) disclosures, Good Faith Estimate, and the loan application used in the closing of this loan, and any other documents used in the closing of this loan.

7.    A copy of any other closing documents given to the Borrower, including, but not limited to, any rescission notices, note riders.

8.    A copy of the **recorded Promissory Note** and **Deed of Trust signed** by the Borrower.

9.    If you have purchased and charged to the account any **Vendor's Single Interest Insurance, Forced Place Insurance, or other insurance** product, please provide complete and itemized statement(s) from the date of the loan to the date of this letter of any payments and expenses related in any way to this loan.

Page | 4 of 7

*QUALIFIED WRITTEN REQUEST dated June 28, 2011*

**QWR-BAC Home Loan Servicing, LP**
**Borrower: Anita Komisczka Heck**
**Loan Acct. No. 178968325**

10.   A copy of the **MERS Milestone report** for this **MERS designated loan**

11.   A complete and itemized statement from the date of the loan to the date of this letter of any **suspense account entries** and/or any **corporate advance entries** related in any way to this loan.

12.   A complete and itemized statement from the date of the loan to the date of this letter of any **property inspection fees, property preservation fees, broker opinion fees, appraisal fees, bankruptcy monitoring fees,** or other similar fees or expenses related in any way to this loan.

13.   Identify the **provision under the Deed of Trust and/or note that authorizes charging each and every such fee** against the loan of the Borrowers.

14.   Please attach copies of all **property inspection reports** and **appraisals** performed for purposes of originating this loan and/or any other purpose through the date of this letter. <u>Note:</u> I paid for the appraisal prior to the closing and requested a copy of said appraisal in writing from Countrywide and/or Alliance Mortgage (broker) but did not receive one.

15.   A complete copy of any **key loan transaction report(s)** and any reports indicating any charges for any **"add on products"** sold to the Borrowers in connection with this loan from the date of the loan to the date of this letter.

16.   A <u>**complete and itemized statement of any and all arrearages**</u> including each month in which the default occurred, and the amount of each monthly default.

17.   A complete and itemized statement of any **late charges** to this loan from the date of this loan to the date of this letter.

18.   The amount, if applicable, of any **"satisfaction fees."**

19.   A complete and itemized statement from the date of the loan to the date of this letter of any **fees incurred to modify, extend, or amend the loan or to defer any payment due** under the terms of the loan.

20.   A full and complete comprehensible **definitional dictionary of all transaction codes and other similar terms used** in the statements requested above.

*QUALIFIED WRITTEN REQUEST dated June 28, 2011*

**QWR-BAC Home Loan Servicing, LP**
**Borrower: Anita Konelczka Heck**
**Loan Acct. No. 178968325**

21. A complete and itemized statement of any **funds deposited in any suspension account(s) or corporate advance account(s)**, including, but not limited to, the balance in any such account or accounts and the nature, source and date of all funds deposited in such account or accounts.

22. A complete and itemized statement from the date of this loan to the date of this letter of the **amount, payment date, purpose and recipient** of all foreclosure expenses, NSF check charges, legal fees, attorney fees, professional fees and other expenses and costs that have been **charged against or assessed** to this mortgage.

23. A complete and itemized statement of the amount, payment date, purpose, and recipient of all fees.

24. The **full name, address, and phone number** of the **current holder of this debt** including the **name, address** and **phone number** of **any trustee or other fiduciary**. This request is being made pursuant to *Section 1941(f)(2) of the Truth in Lending Act*, which requires the servicer to identify the holder of the debt.

25. The **name, address, and phone number** of any **master servicers, servicers, sub-servicers, contingency servicers, back-up servicers, or special servicers** for the underlying mortgage debt.

26. A copy of any **mortgage Pooling and Servicing Agreement (PSA)** and all **Disclosure Statements** provided to any investors with respect to any **mortgage-backed security trust** or **other special purpose vehicle** related to the said Agreement and any and all **Amendments and Supplements** thereto.

27. If a copy of the **Pooling and Servicing Agreement (PSA)** has been filed with the SEC, provide a copy of **SEC Form 8k** and **the Prospectus Supplement, SEC Form 424b5**.

28. The **name, address** and phone number of any **Trustee** under any **Pooling and Servicing Agreement (PSA)** related to this loan.

29. A copy of the **Prospectus** offered to investors in the trust.

30. Copies of all **servicing, master servicing, sub-servicing, contingency servicing, special servicing, or back-up servicing agreements** with respect to this account.

*QUALIFIED WRITTEN REQUEST dated June 28, 2011*

**QWR-BAC Home Loan Servicing, LP**
**Borrower: Anita Koneiczka Heck**
**Loan Acct. No. 178968325**

31. **All written loss-mitigation rules and work-out procedures** related to any defaults regarding this loan and similar loans.

32. A copy of the **procedural manual** used with respect to the servicing or sub-servicing of this loan.

33. A summary of all **fixed or standard legal fees approved** for any form of legal services rendered in connection with this account.

34. Is this loan subject to any Electronic Tracking Agreement? If the answer is yes, then state the **full name** and **address** of the **Electronic Agent** and the **full name** and address of the **Mortgage Electronic Registration System**.

35. Is the servicing of this loan provided pursuant to any type of **mortgage electronic registration system procedures manual**? If so, please provide a copy of the procedures manual.

36. A copy of the **LSAMS Transaction History Report** for the Borrowers' mortgage loan account, with a **detailed description of all fee codes**.

37. This is a **MERS Designated Mortgage Loan.** Please identify the **electronic agent** and **the type of mortgage electronic system** used by the agent.

38. Is this mortgage part of a **Mortgage Warehouse Loan?** If so, then state the **full name** and **address of the Lender** and attach a copy of the **Warehouse Loan Agreement**.

39. Upon any default or notice of default, state whether or not the Mortgage Warehouse Lender has the right to override any servicers or sub-servicers and provide instructions directly to the Electronic Agent? If the answer is yes, then specifically **identify the legal basis for such authority.**

40. Is this mortgage part of a **Whole Loan Sale Agreement?** If the answer is yes, then state the **name** and **address of the Purchaser, the Custodian, the Trustee, the Electronic Agent** and **any Servicer or Sub-Servicers.**

41. Please state the **full name** and **address of any attorney(s)** you have retained to provide any **legal services within the last two (2) years** on this account.

PAGE 1 OF 2

EXHIBIT
A

# ANITA K. HECK, PH.D.
## 286 BROWN RD.
## PHENIX CITY, AL 36869
## TEL. 334-297-9412(HOME & FAX)
## TEL.  985-791-5387 (CELL)

### FACSIMILE TRANSMITTAL SHEET

| TO:<br>Andy Saag or Others | FROM:<br>Anita K. Heck |
|---|---|
| **COMPANY:**<br>Sirote & Permutt | **DATE:**<br>JUNE 16, 2011 |
| **FAX NUMBER:**<br><br>205-930-5101 | **TOTAL NO. OF PAGES INCLUDING COVER:**<br>13 |
| **PHONE NUMBER:** | |
| **RE: Anita K. Heck**<br>**BOA LOAN # 178968325**<br>**REQUEST FOR**<br>**REINSTATEMENT AMOUNT** | **PROPERTY ADDRESS:**<br>286 BROWN ROAD<br>PHENIX CITY, AL<br>RUSSELL COUNTY |

# URGENT – PLEASE READ & REPLY TODAY

NOTES/COMMENTS:

## CONFIDENTIAL

## REQUEST FOR REINSTATEMENT AMOUNT

Dear Mr. Saag:

A foreclosure sale for my home is set for tomorrow morning in Russell County.   Please fax an itemized list of **Reinstatement Costs** — I am trying to make a loan, but I am doubtful they will approve it before the sale, but I'm trying.                              (CONTINUED)

As you know, your firm did not advertise the property in accordance with my Mortgage Contract and the Code of Alabama property laws; and the sale will be deemed null and void.

I'm requesting once again that you contact BAC Home Loans Servicing, LP for a postponement. I have sent them a QWR, which I copied you.

Also, BAC is under the impression my home is not owner occupied. I am sitting in my livingroom right now at 286 Brown Road, Phenix City, AL 36869 in the home I have occupied since June 2004.

A year and a half ago, I requested that I be given the option of a Deed In Lieu with Rental should I be denied a loan modification. BAC assured me I would be given the option. They lied and I, and my 4 dogs and 9 cats, have nowhere to go tomorrow if our home is sold.

Please postpone the sale one more month so that I can get it through to BAC that I live here. I am in Louisiana a lot, because I lost my job, my mother is 88 years old and not well and I am all she has, so I am spending as much time as I can with her. After recently losing my husband and brother suddenly, I want no regrets when my mother passes. But, I have always occupied my Alabama home as my primary residence.

Please fax the reinstatement document to me at MY HOME at 334-297-9412. Call 411 and ask for Mildred Cleckler's address and they will tell you the location is 286 Brown Road, Phenix City, AL — I put my phone in my mother's name so I don't have a ton of bill collectors calling day and night. Then fax the Reinstatement quote to THAT phone number — I am here.

Thank you,

*Anita K Heck*

Anita K. Heck

LEANNA MATHEWS
FORECLOSURE SPECIALIST
(205) 930-5200

**EXHIBIT B**

# SIROTE
## &
# PERMUTT
#### A PROFESSIONAL CORPORATION

June 21, 2011

Anita K. Heck
313 Southdown West Blvd
Houma, LA 70360

286 Brown Road
Phenix City, Alabama 36869

RE:      Loan Number: 178968325
         Property Address: 286 Brown Road Phenix City, Alabama 36869

This letter responds to your recent request that our office provide you a reinstatement figure for your above-referenced loan, and supersedes any prior written or oral communications regarding your loan. The total amount to reinstatement the loan, good through June 30, 2011 is broken down as follows:

| | |
|---|---|
| Amount due to Bank of America | $45409.33 |
| Foreclosure Attorney Fees | $480.00 |
| Estimated loan default related costs, such as newspaper publication and title search costs | $458.00 |
| **Total Amount to Reinstate** | **$46347.33** |

The reinstatement amount must be received in the form of a wire, certified or cashier's check and made payable to Sirote & Permutt, P.C. If you wish to wire the proceeds, please contact our office. If you are unable to reinstate the above-referenced account, please contact Bank of America's Loan Workout Department at 1-800-669-6650.

If you need anything further with respect to this matter, please do not hesitate to contact our office at 205-930-5200.

This communication is from a debt collector.

Yours very truly,

Leanna Mathews
Foreclosure Specialist
/lm

LAW OFFICES AND MEDIATION CENTER
2311 HIGHLAND AVENUE SOUTH    BIRMINGHAM, ALABAMA 35205
POST OFFICE BOX 55727    BIRMINGHAM, ALABAMA 35255-5727
FAX | 205.930.5101    URL | http://www.sirote.com

TELEPHONE | 205.930.5100


Birmingham    |    Huntsville    |    Mobile



CRPRDNRBS42a          3/1/2011 8:05:31 PM   PAGE     1/003    Fax Server

## FACSIMILE COVER SHEET



EXHIBIT
C

**From:**
Name:              Customer Service
Fax Number:
Voice Phone:       (800)669-6607

**To:**
Name:              ANITA K HECK
Company:
Fax Number:        (985) 876 7289
Voice Phone:

**Fax Notes:**

BAC Home Loans Servicing, LP

Date and time of transmission:        3/1/11 19:48
Number of pages including this cover page: 3

THIS MESSAGE IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL OR EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF THE READER OF THIS MESSAGE IS NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THE MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE, AND DESTROY THIS DOCUMENT. THANK YOU.

# EXHIBIT D



**Bank of America**

Home Loans
P.O. Box 5170
Simi Valley, CA 93062-5170

**Notice Date:** 09/01/2011

**Account No.:** 178968325

ANITA K HECK
313 Southdown West Blvd
Houma, LA 70360

**Property Address:**
286 BROWN ROAD
PHENIX CITY, AL 36869

---

**ABOUT YOUR LOAN**

Attached is a loan history that provides a detailed outline of transactions for the above-referenced account number.

Please note that this history provides pertinent information on payments received, tax and insurance payments disbursed, and late charges assessed and paid.

---

**THANK YOU FOR YOUR BUSINESS**

You are a valued customer here at Bank of America, N.A. and it is our continued goal to provide our customers with the highest level of customer satisfaction.

If you need further assistance, please contact our Customer Service Department directly at 1-800-669-6607.

This communication is from Bank of America, N.A., the servicer of your home loan.

LNHSTF 7473/9844 08/27/2007

Sep 07 11 06:16p      Anita K. Hook, Ph.D.                    985-876-7289              p.9
CRPRDNRB557b                      9/1/2011  5:41:15 PM    PAGE    6/008    888-294-5658

**Bank of America**
**Home Loans**

Account Number: 178968525
Statement Period: 09/2007 - 09/2011
Date Prepared: 09/01/2011

Property Address:
266 BROWN ROAD
PHENIX CITY, AL 36869

Page 6

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 07/14/2009 | PM PMT MONTHLY | -101.98 | 10/2009 | .00 187,874.87 | .00 | -101.98 -1,788.72 | .00 | .00 | .00 .00 | .00 .00 |
| 09/13/2009 | PM PMT MONTHLY | -101.98 | 10/2009 | .00 187,874.87 | .00 | -101.98 -1,891.70 | .00 | .00 | .00 .00 | .00 .00 |
| 09/14/2009 | MISC. POSTING | .00 | 10/2009 | .00 187,874.87 | .00 | .00 -1,891.70 | .00 | .00 | .00 .00 | 1,440.51 1,440.51 |
| 09/15/2009 | PM PMT MONTHLY | -101.98 | 10/2009 | .00 187,874.87 | .00 | -101.98 -1,993.68 | .00 | .00 | .00 .00 | .00 1,440.51 |
| 10/05/2009 | MISC. POSTING | 1,295.00 | 10/2009 | .00 187,874.87 | .00 | .00 -1,993.68 | .00 | .00 | .00 .00 | 1,395.00 2,975.51 |
| 10/16/2009 | PM PMT MONTHLY | -101.98 | 10/2009 | .00 187,874.87 | .00 | -101.98 -2,095.66 | .00 | .00 | .00 .00 | .00 2,975.51 |
| 11/09/2009 | PM PMT MONTHLY | -101.98 | 10/2009 | .00 187,874.87 | .00 | -101.98 -2,197.64 | .00 | .00 | .00 .00 | .00 2,975.51 |
| 11/17/2009 | COUNTY TAX PMT | -577.94 | 10/2009 | .00 187,874.87 | .00 | -577.94 -2,775.68 | .00 | .00 | .00 .00 | .00 2,975.51 |
| 12/18/2009 | PM PMT MONTHLY | -101.98 | 10/2009 | .00 187,874.87 | .00 | -101.98 -2,877.44 | .00 | .00 | .00 .00 | .00 2,975.51 |
| 01/19/2010 | PM PMT MONTHLY | -101.98 | 10/2009 | .00 187,874.87 | .00 | -101.98 -2,979.44 | .00 | .00 | .00 .00 | .00 2,975.51 |
| 02/19/2010 | PM PMT MONTHLY | -101.98 | 10/2009 | .00 187,874.87 | .00 | -101.98 -3,081.42 | .00 | .00 | .00 .00 | .00 2,975.51 |
| 03/19/2010 | PM PMT MONTHLY | -101.98 | 10/2009 | .00 187,874.87 | .00 | -101.98 -3,183.40 | .00 | .00 | .00 .00 | .00 2,975.51 |
| 04/14/2010 | PM PMT MONTHLY | -101.98 | 10/2009 | .00 187,874.87 | .00 | -101.98 -3,285.38 | .00 | .00 | .00 .00 | .00 2,975.51 |
| 04/23/2010 | MISC. POSTING | -1,487.71 | 10/2009 | .00 187,874.87 | .00 | .00 -3,285.38 | .00 | .00 | .00 .00 | -1,487.71 1,287.80 |

Bank of America
Home Loans

Account Number: 175995325
Statement Period: 09/2007 - 09/2011
Date Prepared: 09/01/2011

Property Address:
256 BROWN ROAD
PHENIX CITY, AL 36869

Page 7

| Transaction Date | Description | Total Payment | PMT/Mo | Principal Balance | Interest | Escrow Balance | Optional | Buydown | Late Charges Total | Unapplied Total |
|---|---|---|---|---|---|---|---|---|---|---|
| 04/22/2010 | REGULAR PAYMENT | 1,467.31 | 11/2008 | 162.76 | 1,058.11 | 934.84 | | | | |
| 05/12/2010 | MISC. POSTING | 150.00 | 11/2008 | 167,185.31 | | -3,965.54 | .00 | .00 | -83.14 | 1,267.39 |
| 05/14/2010 | PM PMT MONTHLY | -101.88 | 11/2008 | 167,185.31 | | -3,864.04 | .00 | .00 | .00 | 100.00 |
| 05/14/2010 | PM PMT MONTHLY | -101.88 | 11/2008 | .00 | | -3,762.82 | .00 | .00 | -83.14 | 1,367.39 |
| 06/16/2010 | HAZARD INS PMT | -815.75 | 11/2008 | 167,185.31 | | -815.75 | .00 | .00 | .00 | |
| 06/14/2010 | PM PMT MONTHLY | -101.88 | 11/2008 | .00 | | -3,845.09 | .00 | .00 | -83.14 | 1,367.39 |
| 06/14/2010 | PM PMT MONTHLY | -101.88 | 11/2008 | 167,185.31 | | -4,106.14 | .00 | .00 | -83.14 | 1,367.39 |
| 07/19/2010 | PM PMT MONTHLY | -101.88 | 11/2008 | .00 | | -4,207.38 | .00 | .00 | -83.14 | 1,367.39 |
| 08/16/2010 | PM PMT MONTHLY | -101.88 | 11/2008 | .00 | | -4,265.92 | .00 | .00 | -83.14 | 1,367.39 |
| 08/16/2010 | PM PMT MONTHLY | -101.88 | 11/2008 | 167,185.31 | | -4,365.92 | .00 | .00 | -83.14 | 1,367.39 |
| 09/16/2010 | PM PMT MONTHLY | -101.88 | 11/2008 | .00 | | -4,465.50 | .00 | .00 | -83.14 | 1,367.39 |
| 10/15/2010 | PM PMT MONTHLY | -101.88 | 11/2008 | 167,185.31 | | -4,567.08 | .00 | .00 | -83.14 | 1,367.39 |
| 11/16/2010 | PM PMT MONTHLY | -101.88 | 11/2008 | .00 | | -4,668.06 | .00 | .00 | -83.14 | 1,367.39 |
| 11/19/2010 | COUNTY TAX PMT | -398.04 | 11/2008 | 167,185.31 | | -398.04 | .00 | .00 | -83.14 | 1,367.39 |
| 12/15/2010 | PM PMT MONTHLY | -101.88 | 11/2008 | .00 | | -5,168.22 | .00 | .00 | -83.14 | 1,367.39 |
| 01/13/2011 | PM PMT MONTHLY | -101.88 | 11/2008 | .00 | | -5,299.49 | .00 | .00 | -83.14 | 1,367.39 |
| 02/13/2011 | PM PMT MONTHLY | -101.88 | 11/2008 | 167,185.31 | | -5,401.36 | .00 | .00 | -83.14 | 1,367.39 |
| 02/13/2011 | PM PMT MONTHLY | -101.88 | 11/2008 | .00 | | -5,503.49 | .00 | .00 | -83.14 | 1,367.39 |

# EXHIBIT E

$\mathcal{E}$

## RULE 3

### OBLIGATIONS OF MERS

*Section 1.*       MERS shall within two (2) business days forward to the appropriate Member or Members, in the form prescribed by and otherwise in accordance with the Procedures, all properly identified notices, payments, and other correspondence received by MERS with respect to mortgage loans registered on the MERS® System for which Mortgage Electronic Registration Systems, Inc. serves as mortgagee of record.

*Section 2.*       MERS shall provide to Members certain standard reports concerning information contained on the MERS® System, as specified in the Procedures, and such other reports as MERS may determine from time to time.

*Section 3.*       (a)       Upon request from the Member, Mortgage Electronic Registration Systems, Inc. shall promptly furnish to the Member, in accordance with the Procedures, a corporate resolution designating **one or more officers of such Member**, selected by such Member, as "certifying officers" of Mortgage Electronic Registration Systems, Inc. to permit such Member (i) to release the lien of any mortgage loan registered on the MERS® System to such Member, (ii) assign the lien of any mortgage naming MERS as the mortgagee when the Member is also the current promissory note-holder, or if the mortgage is registered on the MERS® System, is shown to be registered to the Member, (iii) to foreclose upon the property securing any mortgage loan registered on the MERS® System to such Member, (iv) to take any and all actions necessary to protect the interest of the Member or the beneficial owner of a mortgage loan in any bankruptcy

# Sample Corporate Resolution

Be it Resolved that the attached list of candidates are officers of <u><insert name of company></u> a Member of Mortgage Electronic Registration Systems, Inc. (MERS), and are hereby appointed as assistant secretaries and vice presidents of MERS, and, as such, are authorized to:

(1) release the lien of any mortgage loan registered on the MERS System that is shown to be registered to the Member;

(2) assign the lien of any mortgage loan naming MERS as the mortgagee when the Member is also the current promissory note-holder, or if the mortgage loan is registered on the MERS System, is shown to be registered to the Member;

(3) execute any and all documents necessary to foreclose upon the property securing any mortgage loan registered on the MERS System that is shown to be registered to the Member, including but not limited to (a) substitution of trustee on Deeds of Trust, (b) Trustee's Deeds upon sale on behalf of MERS, (c) Affidavits of Non-military Status, (d) Affidavits of Judgment, (e) Affidavits of Debt, (f) quitclaim deeds, (g) Affidavits regarding lost promissory notes, and (h) endorsements of promissory notes to VA or HUD on behalf of MERS as a required part of the claims process;

(4) take any and all actions and execute all documents necessary to protect the interest of the Member, the beneficial owner of such mortgage loan, or MERS in any bankruptcy proceeding regarding a loan registered on the MERS System that is shown to be registered to the Member, including but not limited to: (a) executing Proofs of Claim and Affidavits of Movant under 11 U.S.C. Sec. 501-502, Bankruptcy Rule 3001-3003, and applicable local bankruptcy rules, (b) entering a Notice of Appearance, (c) vote for a trustee of the estate of the debtor, (d) vote for a committee of creditors, (e) attend the meeting of creditors of the debtor, or any adjournment thereof, and vote on behalf of the Member, the beneficial owner of such mortgage loan, or MERS, on any question that may be lawfully submitted before creditors in such a meeting, (f) complete, execute, and return a ballot accepting or rejecting a plan, and (g) execute reaffirmation agreements;

Must be officer of your company

Limitation: may only execute documents for loans registered to your company

Para. 3 thru 7 break out specific types of documents a MERS officer may execute




# Sample Corporate Resolution (cont.)

(5) take any and all actions and execute all documents necessary to refinance, subordinate, amend or modify any mortgage loan registered on the MERS System that is shown to be registered to the Member.

(6) endorse checks made payable to Mortgage Electronic Registration Systems, Inc. to the Member that are received by the Member for payment on any mortgage loan registered on the MERS System that is shown to be registered to the Member;

(7) take any such actions and execute such documents as may be necessary to fulfill the Member's servicing obligations to the beneficial owner of such mortgage loan (including mortgage loans that are removed from the MERS System as a result of the transfer thereof to a non-member of MERS).

I, <u>William C. Hultman</u>, being the <u>Corporate Secretary</u> of Mortgage Electronic Registration Systems, Inc., hereby certify that the foregoing is a **true copy of a** Resolution duly adopted by the Board of Directors of said corporation effective as of the **<insert day>, day of <insert month>, 2009** which is in full force and effect on this date and does not conflict with the Certificate of Incorporation or By-Laws of said corporation.

_____

William C. Hultman, Secretary





# EXHIBIT F

DEED 01129 PAGE 0121

RUSSELL CO.
I CERTIFY THIS INSTRUMENT
WAS FILED ON
DEED 01129 PG 0121-0122 2009-Sep-13
Afford 16, 1079 M.
JUDGE OF PROBATE

STATE OF ALABAMA          )
                          )
COUNTY OF RUSSELL         )

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (the "Assignor"), does hereby transfer, assign, set over and convey unto COUNTRYWIDE HOME LOANS SERVICING, LP (the "Assignee"), its successors, transferees, and assigns forever, all rights, title and interest of said Assignor in and to that certain Mortgage executed by ANITA K HECK, AN UNMARRIED WOMAN, to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR COUNTRYWIDE BANK, FSB dated the 23rd day of August, 2007, and filed for record in Mtg Book 01608, Page 0322, in the Probate Office of Russell County, Alabama, covering property described in said Mortgage, together with the note and indebtedness secured by the Mortgage, and all interest of the undersigned in and to the property described in said Mortgage.

It is expressly understood and agreed that the within transfer and assignment of the said Mortgage is without warranty, representation or recourse of any kind whatsoever.

IN WITNESS WHEREOF, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. has caused this instrument to be executed by Ginny C. Rutledge, as Assistant Secretary and Vice President of Mortgage Electronic Registration Systems, Inc., pursuant to that certain Agreement for signing, attached hereto as Exhibit, and fully incorporated herein. This Assignment is executed on this the ____ day of _____, 2009.

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By: _____
Ginny C. Rutledge
Assistant Secretary and Vice President of
Mortgage Electronic Registration Systems, Inc.

STATE OF _____     )
                           )
COUNTY OF _____     )

I, _____, a Notary Public in and for the said County and State, do hereby certify that Ginny C. Rutledge, whose name as Assistant Secretary and Vice President of Mortgage Electronic Registration Systems, Inc., a corporation, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of this Assignment, he, and with full authority, executed the same voluntarily for and as the act of said corporation, and acting in its capacity as Assistant Secretary and Vice President as aforesaid.

Given under my hand and official seal this ____ day of _____ of _____, 2009.

_____
Notary Public

My Commission Expires: _____

This instrument prepared by:
Ginny Rutledge
Sirote & Permutt, P.C.
P. O. Box 55727
Birmingham, AL. 35255

# EXHIBIT G

Business Entity Details – Annual Report                                    Page 1 of 1





Government Records
ALABAMA SECRETARY OF STATE
BETH CHAPMAN

Home        Government Records        Business Entities        Search
                 Details             Annual Report

## Business Entity Annual Report - 2009

| Sirote & Permutt, P.C. | |
| --- | --- |
| Entity ID Number | 031 - 183 |
| Telephone Number | 205-933-7111 |
| Date Proccessed by Revenue | 7-14-2010 |
| Reporting Address | SIROTE & PERMUTT P C<br>2311 HIGHLAND AVE S<br>BIRMINGHAM, AL 35205-2972 |
| Agent as Reported | COOPER, JOHN<br>2311 HIGHLAND AVE S<br>BIRMINGHAM, AL 35205-2972 |
| President | COOPER, JOHN<br>2311 HIGHLAND AVE S<br>BIRMINGHAM, AL 35205-2972 |
| Secretary | WRIGHT, DONALD<br>501 RUSSET BEND DR<br>HOOVER, AL 35244 |
| General Business | LAW PRACTICE |

Detail Page        New Search

Browse Results

P.O. Box 5616          Alabama Directory | Media | Online Services | Alabama.gov          Phone: (334) 242-7200
Montgomery, AL 36103-5616     Statements/Policies | Alerts | Survey/Comments | Feeds | Contact Us          Fax: (334) 242-4993

http://arc-sos.state.al.us/cgi/corpdetail.mbr/annual?corp=031183&year=2009&page=name          1/12/2012

Business Entity Details – Annual Report                                                      Page 1 of 1



Government Records
ALABAMA SECRETARY OF STATE
BETH CHAPMAN

Home    Government Records    Business Entities    Search
         Details               Annual Report

### Business Entity Annual Report - 2010

| Sirote & Permutt, P.C. | |
|---|---|
| Entity ID Number | 031 - 183 |
| Telephone Number | 205-933-7111 |
| Date Processed by Revenue | 6-26-2011 |
| Reporting Address | SIROTE & PERMUTT P C<br>2311 HIGHLAND AVE S<br>BIRMINGHAM, AL 35205-2972 |
| Agent as Reported | COOPER, JOHN<br>2311 HIGHLAND AVE S<br>BIRMINGHAM, AL 35205-2972 |
| President | COOPER, JOHN<br>2311 HIGHLAND AVE S<br>BIRMINGHAM, AL -2972 |
| Secretary | WRIGHT, DONALD<br>501 RUSSET BEND DR<br>HOOVER, AL 35244 |
| General Business | LAW PRACTICE<br>PO BOX 66727<br>BIRMINGHAM, AL 35255-6727 |

Detail Page          New Search

Browse Results

P.O. Box 5616                    Alabama Directory | Media | Online Services | Alabama.gov          Phone: (334) 242-7200
Montgomery, AL 36103-5616        Statements/Policies | Alerts | Survey/Comments | Feeds | Contact Us   Fax: (334) 242-4993



Home     Government Records     Business Entities     Search
         Details                Annual Report

### Business Entity Annual Report - 2011

| Sirote & Permutt, P.C. | |
|---|---|
| Entity ID Number | 031 - 183 |
| Telephone Number | 205-933-7111 |
| Date Processed by Revenue | 9-9-2011 |
| Reporting Address | SIROTE & PERMUTT P C<br>2311 HIGHLAND AVE S<br>BIRMINGHAM, AL 35205-2972 |
| Agent as Reported | COOPER, JOHN<br>2311 HIGHLAND AVE S<br>BIRMINGHAM, AL 35205-2972 |
| President | COOPER, JOHN<br>2311 HIGHLAND AVE S<br>BIRMINGHAM, AL 35205-2972 |
| Secretary | WRIGHT, DONALD<br>501 RUSSET BEND DR<br>HOOVER, AL 35244 |
| General Business | LAW PRACTICE<br>PO BOX 55727<br>BIRMINGHAM, AL 35255-5727 |

Detail Page     New search

Browse Results

P.O. Box 5616
Montgomery, AL 36103-5616

Alabama Directory | Media | Online Services | Alabama.gov
Statements/Policies | Alerts | Survey/Comments | Feeds | Contact Us

Phone: (334) 242-7200
Fax: (334) 242-4993